

1  Arthur Sherman, Esquire
   Cal. State Bar No. 24403
2  SHERMAN SALKOW PETOYAN & WEBER
   A Professional Corporation
3  9454 Wilshire Boulevard, Suite 550
   Beverly Hills, CA 90212
4  (310) 275-5077

5  Howard A. Specter, Esquire, Pa. I.D. #10986
   John C. Evans, Esquire, Pa. I.D. #49351
6  David J. Manogue, Esquire, Pa. I.D. #42119
   SPECTER SPECTER EVANS & MANOGUE, P.C.
7  The 26th Floor
   Koppers Building
8  Pittsburgh, PA 15219
   (412) 642-2300

9
   Attorneys for Plaintiffs
10

11             IN THE UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  In re                              )   MDL NO. 1060 R
                                       )
14  BAXTER HEALTHCARE CORPORATION      )   CONSOLIDATED AMENDED
    GAMMAGARD PRODUCTS LIABILITY       )   CLASS ACTION COMPLAINT
15  LITIGATION                         )
                                       )   DEMAND FOR JURY TRIAL
16                                     )
    This Document Relates to:          )
17                                     )
    All actions.                       )
18                                     )
                                       )
19  KRISTEN RENEE GEARY, JOHN          )
    MAVRIKOS and BRENDA JOHNSON,       )
20  individually and on behalf of all other )
    persons similarly situated,        )
21                                     )
             Plaintiffs,               )
22                                     )
         v.                            )
23                                     )
    BAXTER HEALTHCARE CORPORATION,     )
24  A Foreign Corporation,             )
                                       )
25           Defendant.                )
                                       )
26

27  ///

28  ///

                            1
          Consolidated Amended Class Action Complaint

Send   ORIGINAL
FILED
DEC 20 1999
NUNC PRO TUNC Nov. 15, 1999
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY
DEPUTY

ENTERED ON ICMS
DEC 21 1999
CV

## PRELIMINARY STATEMENT

PLAINTIFFS bring this class action on behalf of all persons who used or had administered the prescription drug called GAMMAGARD® from January 1, 1993 until February 24, 1994, inclusive.  The plasma used in the manufacture of GAMMAGARD® is obtained from the blood plasma of donors located across the country.  Due to negligence in its manufacturing and screening process and its other conduct, defendant BAXTER HEALTHCARE CORPORATION manufactured and distributed GAMMAGARD® contaminated with the hepatitis C virus, even though it could have tested for and either eliminated or inactivated such blood-borne viruses.  BAXTER HEALTHCARE CORPORATION represented to patients, their physicians and others that GAMMAGARD® was safe and effective despite its awareness that it was not.

## PARTIES AND JURISDICTION

1.     This Court has jurisdiction pursuant to 28 U.S.C. §1332 and 15 U.S.C. §3301 et seq.

2.     Defendant BAXTER HEALTHCARE CORPORATION (hereafter "BAXTER"), is incorporated under the laws of the state of Delaware.  BAXTER's principal place of business is in Illinois.   BAXTER is authorized to do business and does business in California.

3.     A substantial part of the events giving rise to the claims herein, occurred in this district.

4.     PLAINTIFF Kristen Renee Geary is a resident and citizen of the Commonwealth of Pennsylvania.

5.     PLAINTIFF John Mavrikos is a resident and citizen of New York.

6.     PLAINTIFF Brenda Johnson is a resident and citizen of Missouri.

7.     BAXTER develops, patents, manufactures, tests, markets and sells GAMMAGARD® and other medical supplies and products.

8.     The amount in controversy for each class member and claim exceeds the sum of $75,000.00, exclusive of interest and costs per class member.

2

0008

## FACTUAL ALLEGATIONS

9.      BAXTER manufactures and distributes GAMMAGARD®.

10.      BAXTER developed and patented GAMMAGARD® and has actively manufactured, marketed and distributed the product.

11.      GAMMAGARD® is typically administered intravenously, and is prescribed for persons who, among other things, suffer from congenital diseases and immune system disorders.  Plasma used by BAXTER in the manufacture of GAMMAGARD® is obtained from blood plasma of donors located across the country who sell their blood.

12.      It is well known within the pharmaceutical industry that when purchasing human plasma, there is a likelihood that it may contain blood-borne viruses such as the hepatitis C virus.  Consequently, methods to locate, inactivate or remove viruses, such as using solvent detergents, incubation at controlled temperatures, and the Cohen-Oncley fraction process, are commonly used.

13.      In early 1993, in connection with her medical treatment, GAMMAGARD® was prescribed for PLAINTIFF Kristen Renee Geary and infused into her body.  After that first infusion, PLAINTIFF Kristen Renee Geary was infused with GAMMAGARD® on numerous occasions.

14.      In August of 1993, in connection with his medical treatment, GAMMAGARD® was prescribed for PLAINTIFF John Mavrikos and infused into his body.  After that first infusion, PLAINTIFF John Mavrikos was infused with GAMMAGARD® on numerous occasions.

15.      In early 1993, in connection with her medical treatment, GAMMAGARD® was prescribed for PLAINTIFF Brenda Johnson and infused into her body.  After that first infusion, PLAINTIFF Brenda Johnson was infused with GAMMAGARD® on numerous occasions.

16.      BAXTER intended GAMMAGARD® to be used in the manner which it was administered to the PLAINTIFFS and to the other members of the class.

17.      BAXTER failed to take those actions necessary to inactivate or remove the

3

1  hepatitis C virus from GAMMAGARD® when techniques existed to locate, inactivate or

2  remove the blood-borne hepatitis C virus.

3      18.     GAMMAGARD® administered to the PLAINTIFFS and other class members

4  was contaminated with the hepatitis C virus and therefore was defective at the time it left

5  BAXTER's control, thereby exposing thousands of users to the hepatitis C virus.  Many class

6  members have already developed hepatitis C as a result.

7      19.     PLAINTIFFS were infused with contaminated GAMMAGARD® between

8  January 1, 1993 and February 24, 1994 and, as a result, were exposed to the hepatitis C virus.

9      20.     In May of 1994, PLAINTIFF Kristen Geary's treating physician advised her

10  that she had developed hepatitis caused by BAXTER's GAMMAGARD®.

11     21.     In January of 1994, PLAINTIFF John Mavrikos' treating physician advised

12  him that  he had developed hepatitis caused by BAXTER's GAMMAGARD®.  He has since

13  tested PCR negative.

14     22.     To present, Brenda Johnson has tested negative for HCV.

15     23.     BAXTER knew that infusion of its contaminated GAMMAGARD® product

16  could cause transmission of the hepatitis C virus.

17     24.     PLAINTIFF Kristen Renee Geary remains at risk for chronic hepatitis.

18  Studies indicate that a large percentage of those suffering from chronic hepatitis develop

19  chronic active hepatitis, a variably progressive disease that ultimately results in cirrhosis and

20  hepatic failure.  In addition, PLAINTIFF Kristen Geary is also now at risk for hepatocellular

21  carcinoma.

22     25.     PLAINTIFF John Mavrikos remains at risk for chronic hepatitis.  Studies

23  indicate that a large percentage of those who contract but clear the hepatitis C virus can later

24  test positive for hepatitis C and develop chronic active hepatitis, a variably progressive

25  disease that ultimately results in cirrhosis and hepatitis failure.  In addition, PLAINTIFF John

26  Mavrikos is also now at risk for hepatocellular carcinoma.

27     26.     Hepatic cell necrosis, caused by the hepatitis C virus, can occur for decades.

28     27.     As a result of the foregoing, PLAINTIFFS and  members of the class have or

1  may sustain personal injuries, suffer economic loss and require medical monitoring, testing

2  and treatment for the remainder of their lives.

3      28.    BAXTER'S manufacturing techniques allowed for multiple lots of raw

4  materials to be used in the manufacture of one unit of GAMMAGARD®.  Since BAXTER

5  has not and cannot identify the source of the active hepatitis C virus, all class members who

6  received GAMMAGARD® between January 1, 1993 and February 24, 1994 were at risk for

7  contracting hepatitis.

8      29.    On February 23, 1994, BAXTER finally issued a recall of GAMMAGARD®

9  noting a "possible association between hepatitis C virus (HCV) transmission and

10  GAMMAGARD® ..." BAXTER knew or should have known of the need for a recall prior to

11  that time.

### CLASS ACTION ALLEGATIONS

13      30.    PLAINTIFFS incorporate  by reference Paragraphs 1 through 28 as if set forth

14  at length herein.

15      31.    PLAINTIFFS bring this action pursuant to Federal Rule of Civil Procedure

16  23(b)(2), 23(b)(3) and 23(c)4 on behalf of:

17          All living **Recipients** (i.e., citizens or permanent residents of

18          the United States who received an infusion of Gammagard®

19          during the **Window Period**, i.e., between January 1, 1993 and

20          February 24, 1994); (b) the estate, if any, of any deceased

21          **Recipient**; (c) in the absence of an estate, the surviving spouse

22          of the deceased **Recipient**, (d) in the absence of an estate or

23          surviving spouse, the surviving children of the deceased

24          **Recipient**, or (e) in the absence of an estate, surviving spouse

25          or children, the surviving parents of the deceased **Recipient**.

26  As a part of the class, PLAINTIFFS also bring this action on behalf of the three following

27  subclasses:

28          **"Current Infection"** -- involving Recipients who are currently

1         infected with HCV as a result of their infusion with

2         GAMMAGARD® between January 1, 1993 and February 24,

3         1994.

4         **"Past Infection"** -- involving Recipients who were previously

5         infected with HCV as a result of their infusion with

6         GAMMAGARD® between January 1, 1993 and February 24,

7         1994, but who no longer are infected, either because they have

8         "cleared" the virus or because they are deceased.

9         **"Exposure Only"** -- involving Recipients who were exposed to

10        possible HCV infection through their infusion with

11        GAMMAGARD® between January 1, 1993 and February 24,

12        1994, but who currently do not appear to have experienced a

13        resulting HCV infection.

14      32.    PLAINTIFFS are members of the class.  PLAINTIFF Kristen Renee Geary is

15  currently infected with HCV as a result of infusion with GAMMAGARD® and is therefore

16  an appropriate representative of the Current Infection Subclass.  Plaintiff John Mavrikos was

17  previously infected with HCV as a result of infusion with GAMMAGARD®, but has cleared

18  the virus and is therefore an appropriate representative of the Past Infection Subclass.

19  PLAINTIFF Brenda Johnson was exposed to HCV as a result of infusion with

20  GAMMAGARD®, but has never tested positive for HCV and is therefore an appropriate

21  representative of the Exposure Only Subclass.

22      33.    The members of the class are so numerous that joinder of all of its members is

23  impracticable.  BAXTER has manufactured and sold at least tens of thousands of

24  GAMMAGARD® units which have been administered to class members.  The identities of

25  all class members are unknown at this time.  Upon information and belief, the class consists

26  of thousands of persons.

27      34.    PLAINTIFFS' claims are typical of the claims of the class in that each

28  member of the class, including the PLAINTIFFS, was administered GAMMAGARD® or is

Consolidated Amended Class Action Complaint

00012

1   the spouse or child of someone who was administered GAMMAGARD®. PLAINTIFFS'

2   claims that they sustained physical, mental and/or emotional injuries, fright, inconvenience

3   and interruption of or intrusion into their personal lives, and economic damages, including

4   loss of income, and that they continue and will continue to suffer harm and require medical

5   monitoring, testing and treatment because of BAXTER's wrongful conduct are also typical of

6   the other members of the class.

7        35.     PLAINTIFFS will fairly and adequately represent and protect the interests of

8   the members of the class.  PLAINTIFFS have retained attorneys experienced in the

9   prosecution of complex and class action litigation.

10       36.     Common questions of law and fact exist as to all members of the class.  These

11  questions predominate over any questions affecting only individual members of the class.

12  These common legal and factual questions include the following:

13       (a)     Was the GAMMAGARD®, developed, manufactured, distributed,

14               fabricated, advertised, promoted and/or sold by BAXTER

15               contaminated and defective?

16       (b)     Did BAXTER conduct adequate testing of GAMMAGARD® to

17               determine its safety prior to selling and distributing it and did it

18               accurately report the results of this testing?

19       (c)     When did BAXTER learn of defects or contaminants in its

20               GAMMAGARD®?

21       (d)     What steps, if any, did BAXTER take to cure the defects that had

22               harmed or may harm those who were infused with GAMMAGARD®?

23       (e)     Did BAXTER continue to sell and distribute contaminated

24               GAMMAGARD® after it knew of the defects and of the injuries and

25               risks associated with its use?

26       (f)     Did BAXTER fail to give adequate and timely warning of the dangers

27               associated with the use of GAMMAGARD®?

28       (g)     Have the members of the class sustained injuries and damages, and if

1     so, what is the proper measure of damages?

2     (h)    Are PLAINTIFFS and the class entitled to the establishment of a

3           medical monitoring program designed to identify and, where possible,

4           reduce the risk of future harm from GAMMAGARD®?

5     (i)    Did BAXTER advertise, promote, sell and/or market a defective

6           product?

7     (j)    Is BAXTER strictly liable for sale of a defective product?

8     (k)    Did BAXTER violate the Food, Drug and Cosmetic Act in marketing

9           GAMMAGARD® as safe?

10    (l)    Was BAXTER negligent or reckless?

11    (m)   Did BAXTER breach warranties of merchantability and fitness for a

12          particular purpose?

13    (n)    Is BAXTER guilty of fraud or misrepresentation?

14    (o)    Is BAXTER liable for punitive damages, and if so, in what amount?

15    37.    A class action is superior to other available methods for the fair and efficient

16 adjudication of this litigation.  Individual joinder of all members of the class is impracticable.

17 Further, the burden to the courts of handling thousands of individual cases arising from the

18 same nucleus of operative fact would be excessive.  Individual litigation would also increase

19 the expense of litigation to all parties and to the court system.  Many class members are

20 unaware of their plight and require identification, screening and education.

21    38.    Class certification under Rule 23(b)(2) and Rule 23(b)(3) is appropriate

22 because PLAINTIFFS seek declaratory or equitable relief in the form of a medical monitoring

23 program.  Separate actions could create a risk of incompatible standards of conduct being

24 imposed upon BAXTER.  It is also appropriate because PLAINTIFFS seek the return of all

25 medical, hospital, and surgical costs incurred as a result of injuries suffered as a result of

26 having received GAMMAGARD®, medical, hospital, pharmaceutical and incidental

27 expenses for past and future care, and economic damages for loss of income and future loss

28 of income on behalf of all members of the class.

Consolidated Amended Class Action Complaint

00014

# FIRST CLAIM FOR RELIEF

## NEGLIGENCE

39.     The allegations in Paragraphs 1 through 39 are realleged and incorporated by reference.

40.     BAXTER was negligent in the development, manufacture, testing, warning, marketing and sale of GAMMAGARD®, in that it:

(a)     Failed to use due care in the development, formulation and manufacture of GAMMAGARD® so as to avoid the aforementioned risks to individuals when GAMMAGARD® was being used;

(b)     Failed to accompany its product with proper warnings regarding all possible adverse side effects associated with the use of GAMMAGARD® and the severity and duration of such adverse effects;

(c)     Failed to conduct adequate testing and post-marketing surveillance to determine the safety of GAMMAGARD®;

(d)     Failed to timely issue warnings, recall the product, publicize the recall or problem, or otherwise act to properly and timely alert the public after notice of problems with said product and knowledge that injuries had or could occur as a result of the use of said product; and

(e)     Was otherwise negligent.

41.     As a direct and proximate result of BAXTER's negligence, PLAINTIFFS and the class have suffered significant injuries, disability and impairment.  The injuries have caused or may cause PLAINTIFFS and the class significant pain and suffering and mental anguish, and have significantly interfered with their right to the enjoyment of life.  Due to the chronic nature of these injuries, PLAINTIFFS and the class will continue to incur medical expenses and will continue to experience pain, suffering, mental anguish and interference with their right to the enjoyment of life.  Additionally, PLAINTIFFS Kristen Renee Geary, John Mavrikos and the class have incurred or may incur medical expenses to treat their

9

1    injuries and have lost wages for their employment.  Further, their injuries have adversely

2    affected their earning capacities.

### SECOND CLAIM FOR RELIEF

### STRICT LIABILITY

5    42.    The allegations in Paragraphs 1 through 41 are realleged and incorporated by

6    reference.

7    43.    At the time GAMMAGARD® left the control of BAXTER, it was

8    contaminated and was dangerously defective.

9    44.    By reason of developing, manufacturing, and selling GAMMAGARD® in its

10    dangerously defective condition, BAXTER is strictly liable to the PLAINTIFFS and the class

11    for their injuries and losses.

12    45.    As a direct and proximate result of GAMMAGARD's® defects and/or the

13    unreasonably dangerous condition of GAMMAGARD®, PLAINTIFFS and the class have

14    suffered significant injuries, disability and impairment.  The injuries have caused or may

15    cause PLAINTIFFS and the class significant pain and suffering and mental anguish, and have

16    significantly interfered with the enjoyment of life.  Due to the chronic nature of their injuries,

17    PLAINTIFFS and the class will continue to incur medical expenses and will continue to

18    experience pain, suffering, mental anguish and interference with their right to the enjoyment

19    of life.  Additionally, PLAINTIFFS and the class have incurred or may incur medical

20    expenses to treat their injuries and have lost wages from their employment.  Further, their

21    injuries have adversely affected their earning capacities.

### THIRD CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTIES

24    46.    The allegations in Paragraphs 1 through 45 are realleged and incorporated by

25    reference.

26    47.    BAXTER impliedly warranted that GAMMAGARD® was fit for the

27    particular purpose for which it was designed and that it was a safe and suitable product.

28    48.    PLAINTIFFS and the class relied on BAXTER's skill and judgment and the

1   implied warranty of fitness for the particular purpose for which GAMMAGARD® was

2   purchased.

3        49.    BAXTER further impliedly warranted that GAMMAGARD® was of

4   merchantable quality and was fit, safe and in proper condition for the ordinary use for which

5   GAMMAGARD® was designed and used.

6        50.    In reliance on such an implied warranty of merchantability by BAXTER,

7   PLAINTIFFS and the class allowed GAMMAGARD® to be infused into their bodies.

8        51.    By reason of its contamination and BAXTER's failure to provide adequate

9   warnings regarding GAMMAGARD's® dangers and contamination, GAMMAGARD® was

10   not merchantable or fit for use for its intended purpose.

11        52.    As a direct and proximate result of BAXTER's breach of implied warranty of

12   fitness and the implied warranty of merchantability which PLAINTIFFS, to their detriment,

13   relied upon, PLAINTIFFS and the class have suffered significant injuries with subsequent

14   disability and impairment.  The injuries have caused or may cause PLAINTIFFS and the class

15   significant pain and suffering and mental anguish, and have significantly interfered with the

16   enjoyment of life.  Due to the chronic nature of their injuries, PLAINTIFFS and the class will

17   continue to incur medical expenses and will continue to experience pain, suffering, mental

18   anguish and interference with their right to the enjoyment of life.  Additionally, PLAINTIFFS

19   and the class have incurred or may incur medical expenses to treat their injuries and have lost

20   wages from employment.  Further, their injuries have adversely affected their earning

21   capacities.

22                  **FOURTH CLAIM FOR RELIEF**

23            **BREACH OF EXPRESS WARRANTY**

24        53.    The allegations in Paragraphs 1 through 52 are realleged and incorporated by

25   reference.

26        54.    At all times mentioned herein, BAXTER expressly warranted to PLAINTIFFS

27   and the class and their agents and physicians, by and through statements made by BAXTER

28   or its authorized agents or sales representatives, orally and/or in publications, package inserts

1   or other written materials intended for physicians, medical patients and the general public,

2   that the aforementioned product was safe, effective, fit and proper for its intended use.

3       55.   In utilizing the aforementioned products, PLAINTIFFS and the class relied on

4   the skill, judgment, representations and foregoing express warranties of BAXTER.  Said

5   warranties and representations were false in that the aforementioned product was not safe and

6   was unfit for the uses for which it was intended.

7       56.   As a direct and proximate result of BAXTER's breach of express warranties,

8   which PLAINTIFFS, to their detriment, relied upon, PLAINTIFFS and the class have

9   suffered significant injuries with subsequent disability and impairment.  The injuries have

10   caused or may cause PLAINTIFFS and the class significant pain and suffering and mental

11   anguish, and have significantly interfered with the enjoyment of life.  Due to the chronic

12   nature of their injuries, PLAINTIFFS and the class will continue to incur medical expenses

13   and will continue to experience pain, suffering, mental anguish and interference with their

14   right to the enjoyment of life.  Additionally, PLAINTIFFS and the class have incurred or may

15   incur medical expenses to treat their injuries and have lost wages from employment.  Further,

16   their injuries have adversely affected their earning capacities.

17   **FIFTH CLAIM FOR RELIEF**

18   **FRAUD**

19       57.   The allegations in Paragraphs 1 through 56 are realleged and incorporated by

20   reference.

21       58.   From the time that the aforementioned product was first manufactured,

22   marketed and distributed and up to the present, BAXTER made false and fraudulent

23   misrepresentations to PLAINTIFFS, the class, their physicians and the general public

24   including, but not limited to, that said product was safe, fit and effective for infusion in the

25   human system and that exposure was not hazardous to the health of the recipient.

26       59.   At all times mentioned herein, BAXTER conducted a sales and marketing

27   campaign to promote the sale of GAMMAGARD® through advertisements and other

28   promotional literature and fraudulently deceived the PLAINTIFFS, the class, physicians, and

1    the general public as to the health risks and consequences of the aforementioned products

2    when placed into the human system. These representations were made directly by BAXTER,

3    its sales representatives and other authorized agents of BAXTER.

4         60.     The foregoing representations by BAXTER were, in fact, false, in that the

5    aforementioned product was not safe, fit and effective for infusion into the human system,

6    and continues to be hazardous to the health of the PLAINTIFFS and the class, and said

7    product had a propensity to cause serious injuries to recipients, including, but not limited to,

8    the injuries suffered by PLAINTIFFS and the class as delineated herein.

9         61.     When BAXTER made the foregoing representations, it knew them to be false

10    and said representations were made by BAXTER with the intent to defraud and deceive the

11    PLAINTIFFS, the class, physicians, and the general public, with the intent to induce the

12    PLAINTIFFS and the class and/or their physicians to use GAMMAGARD®.

13         62.     At all times mentioned herein, BAXTER fraudulently concealed from the

14    PLAINTIFFS and the class the true facts, including, but not limited to, the injuries suffered

15    by PLAINTIFFS and the class as delineated herein.

16         63.     In reliance on the foregoing false and fraudulent misrepresentations and

17    omissions by BAXTER, the PLAINTIFFS and the class were induced to and did subject

18    themselves to infusion with GAMMAGARD®. If the PLAINTIFFS and the class had known

19    of the true facts, they would not have taken such action and risk. The reliance of the

20    PLAINTIFFS and the class on BAXTER's misrepresentations and omissions was justified

21    because said misrepresentations and omissions were made by individuals and entities who

22    were in the position to know the true facts.

23         64.     As a direct and proximate result of BAXTER's false and fraudulent

24    misrepresentations and omissions, which the PLAINTIFFS and the class, to their detriment,

25    relied upon, the PLAINTIFFS and the class have suffered significant injuries with subsequent

26    disability and impairment. The injuries have caused or may cause the PLAINTIFFS and the

27    class significant pain and suffering and mental anguish, and have significantly interfered with

28    the enjoyment of life. Due to the chronic nature of their injuries, the PLAINTIFFS and the

00019

1   class will continue to incur medical expenses and will continue to experience pain, suffering,

2   mental anguish and interference with their right to the enjoyment of life. Additionally, the

3   PLAINTIFFS and the class have incurred or may incur medical expenses to treat their injuries

4   and have lost wages from employment.  Further, their injuries have adversely affected their

5   earning capacities.

### SIXTH CLAIM FOR RELIEF

### MISREPRESENTATION

8       65.     The allegations in Paragraphs 1 through 64 are realleged and incorporated by

9   reference.

10      66.     BAXTER negligently and carelessly made the foregoing misrepresentations

11  without a reasonable basis and did not possess information on which to accurately base those

12  representations.

13      67.     BAXTER was aware that it did not possess information on which to

14  accurately base the foregoing representations and concealed from the PLAINTIFFS and the

15  class that there was no reasonable basis for making said representation.

16      68.     When BAXTER made the foregoing representations, it knew or should have

17  known them to be false.

18      69.     In reliance on the foregoing misrepresentations by BAXTER, the

19  PLAINTIFFS and the class were induced to and did subject themselves to infusion with

20  GAMMAGARD®.  If the PLAINTIFFS and the class had known of the true facts, they

21  would not have taken such action and risk.  The reliance of the PLAINTIFFS and the class on

22  BAXTER's misrepresentations and omissions was justified because such misrepresentations

23  and omissions were made by individuals and entities who were in a position to know the true

24  facts.

25      70.     As a direct and proximate result o BAXTER's negligent misrepresentations,

26  which the PLAINTIFFS and the class, to their detriment, relied upon, the PLAINTIFFS and

27  the class have suffered significant injuries with subsequent disability and impairment.  The

28  injuries have caused or may cause the PLAINTIFFS and the class significant pain and

1    suffering and mental anguish, and have significantly interfered with the enjoyment of life.

2    Due to the chronic nature of their injuries, the PLAINTIFFS and the class will continue to

3    incur medical expenses and will continue to experience pain, suffering, mental anguish and

4    interference with their right to the enjoyment of life.  Additionally, the PLAINTIFFS and the

5    class have incurred or may incur medical expenses to treat their injuries and have lost wages

6    from employment.  Further, their injuries have adversely affected their earning capacities.

7                    **SEVENTH CLAIM FOR RELIEF**

8            **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

9            71.    The allegations in Paragraphs 1 through 70 are realleged and incorporated by

10   reference.

11           72.    BAXTER actively promoted and marketed GAMMAGARD® to the

12   PLAINTIFFS, the class, to physicians and the public at large, without regard to the health of

13   GAMMAGARD® recipients or the adequacy of warnings concerning the potentially

14   dangerous health consequences in the face of knowledge to the contrary that the effects of

15   said product were potentially severe, chronic, disabling and permanent.

16           73.    Based upon the foregoing knowledge by BAXTER regarding these dangerous

17   propensities of GAMMAGARD®, BAXTER knew the use of said product would cause the

18   recipients of said product extreme emotional distress on a long term basis.

19           74.    The foregoing conduct of BAXTER was callous and outrageous and amounted

20   to a willful, intentional and reckless disregard for the probability of causing injury to the

21   PLAINTIFFS and the class.

22           75.    As a direct and proximate result of BAXTER's conduct, the PLAINTIFFS and

23   the class have suffered significant injuries with subsequent disability and impairment.  The

24   injuries have caused or may cause the PLAINTIFFS and the class to suffer anxiety, mental

25   anguish and severe emotional and physical distress and have significantly interfered with the

26   enjoyment of life.  Due to the chronic nature of their injuries, the PLAINTIFFS and the class

27   will continue to incur medical expenses and will continue to experience pain, suffering,

28   mental anguish and interference with their right to the enjoyment of life.  Additionally, the

15

1    PLAINTIFFS and the class have incurred or may incur medical expenses to treat their injuries

2    and have lost wages from employment.  Further, their injuries have adversely affected their

3    earning capacities.

## EIGHTH CLAIM FOR RELIEF

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

6    76.    The allegations in Paragraphs 1 through 75 are realleged and incorporated by

7    reference.

8    77.    BAXTER manufactured, actively promoted and marketed GAMMAGARD®

9    to the PLAINTIFFS, the class, to physicians and the public at large, without regard to the

10   health of GAMMAGARD® recipients nor adequate warnings concerning the potentially

11   dangerous health consequences in the face of knowledge to the contrary that the effects of

12   said product were potentially severe, chronic, disabling and permanent.

13   78.    Based upon the foregoing knowledge by BAXTER regarding these dangerous

14   propensities of GAMMAGARD®, BAXTER knew the use of said product would cause the

15   recipients of said product extreme emotional distress on a long term basis.

16   79.    The foregoing conduct of BAXTER was callous and outrageous and amounted

17   to a reckless disregard for the probability of causing injury to the PLAINTIFFS and the class.

18   80.    As a direct and proximate result of BAXTER's conduct, the PLAINTIFFS and

19   the class have suffered significant injuries with subsequent disability and impairment.  The

20   injuries have caused or may cause the PLAINTIFFS and the class to suffer anxiety, mental

21   anguish, severe emotional and physical distress and have significantly interfered with the

22   enjoyment of life.  Due to the chronic nature of their injuries, the PLAINTIFFS and the class

23   will continue to incur medical expenses and will continue to experience pain, suffering,

24   mental anguish and interference with their right to the enjoyment of life.  Additionally, the

25   PLAINTIFFS and the class have incurred or may incur medical expenses to treat their injuries

26   and have lost wages from employment.  Further, their injuries have adversely affected their

27   earning capacities.

28

# NINTH CLAIM FOR RELIEF

## PUNITIVE DAMAGES

81.     The allegations in paragraphs 1 through 80 are realleged and incorporated by reference.

82.     At all times mentioned, BAXTER:

(a)     Knew that GAMMAGARD® was dangerous and unsafe for infusion into the human system as previously delineated herein;

(b)     Concealed the dangers and health risks from the PLAINTIFFS, the class, physicians, and the public at large;

(c)     Misrepresented to the PLAINTIFFS and the class, physicians and the public in general as previously delineated herein; and

(d)     With full knowledge of the health risks associated with the aforementioned product and without adequate warnings of same, manufactured, marketed and distributed GAMMAGARD® for use by the PLAINTIFFS and the class.

83.     The foregoing and other conduct by BAXTER was malicious, fraudulent, outrageous and oppressive toward the PLAINTIFFS, the class and the public and BAXTER thereby acted with willful, wanton and/or conscious and reckless disregard for the safety of the PLAINTIFFS, the class and the general public.

84.     BAXTER, directly, or by and through its officers, directors or managing agents, authorized sales representatives, employees and other agents to engage in the aforesaid conduct and ratified all such activities by said agents.

85.     As a result of BAXTER'S conduct, the PLAINTIFFS and the class suffered injuries and damages as alleged herein and request punitive and exemplary damages in such amounts as would punish BAXTER for its conduct and act as an example that would deter it, as well as other companies and members of the same industry, from engaging in similar conduct in the future.

## TENTH CLAIM FOR RELIEF

## EQUITABLE RELIEF - MEDICAL MONITORING PROGRAM

86.     The allegations in Paragraphs 1 through 85 are realleged and incorporated by reference.

87.     As a direct and proximate result of BAXTER's acts, each class member faces an increased susceptibility to injuries and irreparable threat to their health that can only be mitigated or addressed by the creation of a medical monitoring fund to provide for a medical monitoring program, including:

(a)     Notifying persons infused with GAMMAGARD® of the defects and the potential medical harm;

(b)     Funding a study of the long term effects on recipients of GAMMAGARD®;

(c)     Funding research into possible cures of the detrimental effects of hepatitis;

(d)     Gathering and forwarding to treating physicians information related to the diagnosis and treatment of injuries which may result from the infusion of GAMMAGARD®; and

(e)     Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring.

88.     Persons infused with GAMMAGARD® have no adequate remedy at law in that monetary damages alone do not compensate for the insidious and continuing nature of harm to them, and a monitoring program which notifies them of possible injury and aids in their treatment can prevent the greater harms which may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur or become worse.

89.     Without a medical monitoring program, GAMMAGARD® recipients might not receive prompt medical care which could prolong their productive lives, increase prospects for improvement and minimize disability.

Consolidated Amended Class Action Complaint

00024

1     WHEREFORE, PLAINTIFFS and the class pray for judgment against BAXTER as

2  follows:

3     (a)   Declaring and certifying that this is a class action and

4           appointing PLAINTIFFS as class representatives and

5           PLAINTIFFS' Attorneys as class counsel;

6     (b)   Entering an order requiring BAXTER to make full and accurate

7           disclosure to the public of the risks associated with the use of

8           GAMMAGARD®;

9     (c)   Establishing and funding a medical monitoring program, at

10          Defendant's expense, to notify those persons who have been

11          infused with GAMMAGARD® of dangers associated with said

12          product, to monitor and test the health of those persons who

13          may have been exposed to GAMMAGARD®, either directly or

14          indirectly, to study the effect on recipients of

15          GAMMAGARD® and those that they may come in contact

16          with, to research appropriate medical intervention, to gather

17          and pool information relating to the diagnosis and treatment of

18          hepatitis, and to provide funding for future research, diagnosis,

19          medical advice and treatment of hepatitis;

20    (d)   Entering judgment against BAXTER in an amount in excess of

21          $50,000.00, exclusive of interest and costs of suit per class

22          member;

23    (e)   Awarding punitive damages against BAXTER in an amount in

24          excess of $50,000.00, exclusive of interest and costs of suit per

25          class member;

26    (f)   Appointing a trustee to supervise relief;

27    (g)   Establishing a common fund on behalf of the PLAINTIFFS and

28          the class;

Consolidated Amended Class Action Complaint

00025

1      (h)    Enjoining the prosecution of any other action which may be

2             instituted in the future in this or any other court involving the

3             same class members and/or similar issues;

4      (i)    Awarding reasonable attorneys' fees and costs of the suit;

5      (j)    Awarding any other relief that the PLAINTIFFS may be

6             entitled to at equity or at law.

7  Date: November 15, 1999        SHERMAN SALKOW PETOYAN & WEBER
A Professional Corporation

9                By: _____

10            Arthur Sherman, Esquire (SBN 24403)
9454 Wilshire Boulevard
Suite 550

11            Beverly Hills, CA 90212
(310) 275-5077

13            Howard A. Specter, #10986
John C. Evans, #49351
David J. Manogue, 42119

14            **SPECTER SPECTER EVANS &
MANOGUE, P.C.**

15            The 26th Floor
Koppers Building

16            Pittsburgh, PA 15219
(412) 642-2300

18            Donna Miller Rostant, Esquire
HALL & SICKELS, P.C.

19            12120 Sunset Hills Road
Suite 150

20            Reston, VA 20190
(703) 925-0500

21            ***ATTORNEYS FOR PLAINTIFF
KRISTEN RENEE GEARY***

23            Wayne R. Spivey, Esquire
David S. Shrager, Esquire
SHRAGER McDAID LOFTUS FLUM

24              & SPIVEY
Two Commerce Square

25            2001 Market Street
Philadelphia, PA 19103

26            (215) 568-7771

27

28

Consolidated Amended Class Action Complaint

00026

1                    Arnold Levin, Esquire

                       Laurence S. Berman, Esquire

2                    LEVIN FISHBEIN SEDRAN & BERMAN

                       510 Walnut Street

3                    Suite 500

                       Philadelphia, PA  19105

4                    (215) 592-1500

5                    Charles H. Johnson, Esquire

                       CHARLES H. JOHNSON &

6                     ASSOCIATES, P.A.

                       2599 Mississippi Street

7                    New Brighton, MN  55112

                       (651) 633-5685

8

                       *ATTORNEYS FOR PLAINTIFF*

9                    *JOHN MAVRIKOS*

10                  Dianne M. Nast, Esquire

                       RODA & NAST

11                  801 Estelle Drive

                       Lancaster, PA  17601

12                  (717) 892-3000

13                  Robert C. Huntley, Jr., Esquire

                       HUNTLEY PARK THOMAS BURKETT

14                    OLSEN & WILLIAMS, LLP

                       250 So. 5th Street, Suite 660

15                  P.O. Box 2188

                       Boise, ID 83701

16                  (208) 345-7800

17                  *ATTORNEYS FOR PLAINTIFF*

                      *BRENDA JOHNSON*

18

19

20

21

22

23

24

25

26

27

28

Consolidated Amended Class Action Complaint

00027

## JURY TRIAL DEMAND

PLAINTIFFS hereby demand a trial by jury.

Date: November 15, 1999

SHERMAN SALKOW PETOYAN & WEBER
A Professional Corporation

By: _____

Arthur Sherman, Esquire (SBN 24403)
9454 Wilshire Boulevard
Suite 550
Beverly Hills, CA 90212
(310) 275-5077

Howard A. Specter, #10986
John C. Evans, #49351
David J. Manogue, 42119
SPECTER SPECTER EVANS &
MANOGUE, P.C.
The 26th Floor
Koppers Building
Pittsburgh, PA 15219
(412) 642-2300

Donna Miller Rostant, Esquire
HALL & SICKELS, P.C.
12120 Sunset Hills Road
Suite 150
Reston, VA 20190
(703) 925-0500

*ATTORNEYS FOR PLAINTIFF
KRISTEN RENEE GEARY*

Wayne R. Spivey, Esquire
David S. Shrager, Esquire
SHRAGER McDAID LOFTUS FLUM
& SPIVEY
Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
(215) 568-7771

Arnold Levin, Esquire
Laurence S. Berman, Esquire
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street
Suite 500
Philadelphia, PA 19105
(215) 592-1500

Consolidated Amended Class Action Complaint

00028

Charles H. Johnson, Esquire
CHARLES H. JOHNSON &
  ASSOCIATES, P.A.
2599 Mississippi Street
New Brighton, MN  55112
(651) 633-5685

*ATTORNEYS FOR PLAINTIFF
JOHN MAVRIKOS*

Dianne M. Nast, Esquire
RODA & NAST
801 Estelle Drive
Lancaster, PA  17601
(717) 892-3000

Robert C. Huntley, Jr., Esquire
HUNTLEY PARK THOMAS BURKETT
  OLSEN & WILLIAMS, LLP
250 So. 5th Street, Suite 660
P.O. Box 2188
Boise, ID 83701
(208) 345-7800

**ATTORNEYS FOR PLAINTIFF
BRENDA JOHNSON**

Consolidated Amended Class Action Complaint

00029

1    **CERTIFICATE OF SERVICE**

2       I am a citizen of the United States and am employed in the County of Los Angeles, State of California; my business address is 9454 Wilshire Boulevard, Suite 550, Beverly

3    Hills, California 90212-2915; I am over the age of 18 and not a party to the within action.

4       On November 15, 1999, I caused the within:

5    **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE A CONSOLIDATED AMENDED CLASS ACTION COMPLAINT AND TO ADD**

6    **ADDITIONAL CLASS REPRESENTATIVE PLAINTIFFS**

7    **To be served as follows:**

8    **via Hand Delivery on:**
     James M. Wood, Esq.                          **Via U.S. First Class Mail, postage**

9    CROSBY HEAFEY ROACH & MAY                     **prepaid on:**
     700 S. Flower Street, Suite 2200

10   Los Angeles, CA 90017                         John C. Evans, Esq.
                                                   Specter Specter Evans & Manogue

11   Carl Shapiro, Esq.                            The 26th Floor
     SHAPIRO MITCHELL & DUPONT                     Koppers Building

12   233 Wilshire Boulevard, Suite 700             Pittsburg, PA 15219
     Santa Monica, CA 90401-1220

13                                                 Phil Pfaffly, Esq.
                                                   Robins Kaplan Miller & Ciresi

14   **Via Federal Express Delivery on:**          2800 La Salle Plaza
                                                   800 La Salle Avenue

15   Lee Davies Thames                             Minneapolis, MN 55402
     Butler, Snow, O'Mara, Stevens &

16   Cannada                                       Roman M. Silberfeld, Esq.
     Deposit Guaranty Plaza, 17th Floor           Robins Kaplan Miller & Ciresi

17   210 East Capitol Street                       2049 Century Park East
     Jackson, MS 39201                             Suite 3700

18   Tel: 601/948-5711                             Los Angeles, CA 90067

19   Clifford M. Greene, Esq.
     Sarah L. Brew, Esq.

20   Greene Espel, PLLP
     333 South 7th Street, Suite 1700

21   Minneapolis, MN 55402
     Tel: 612/373-0830

22

23
        I, Rachel Stapler      , declare under penalty of perjury under the laws of the State

24   of California that the foregoing is true and correct; executed on November 15, 1999, in
     Beverly Hills, California.

25                                                 _Rachel Stapler_
                                                   Rachel Stapler

26

27

28